IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | NO. 3:22-cr-00290 |
| v. | ) | |
| | ) | JUDGE CAMPBELL |
| LEON LEWIS, III | ) | |

**MEMORANDUM AND ORDER**

Pending before the Court is Defendant's Motion to Suppress. (Doc. No. 27). Through the motion, Defendant seeks to suppress statements made to police on April 16, 2022. The United States filed a response in opposition. (Doc. No. 29). The Court held a hearing on June 28, 2023. (*See* Doc. No. 37, 38). At the hearing, the United States submitted clips of police body camera footage showing the statements and surrounding circumstances. (*See* Gov't Exs. 1, 2). Following the hearing, Defendant submitted additional police body camera footage and a supplemental brief.[1] (*See* Doc. Nos. 39, 40).

**I.    FACTS**[2]

On April 16, 2022, Officer Ryan Sherry of the Metropolitan Nashville Police Department heard a gunshot near the Southern Extended Stay Hotel on Shugard Way in Nashville, Tennessee. He saw the Defendant walking away from a nearby ditch toward the hotel. In the ditch was a dying dog that appeared to have been shot. Officer Sherry then reviewed surveillance video from the hotel. The hotel surveillance video is not in evidence, however, the parties appear to agree that the

---

[1] The video clips submitted by Defendant were manually filed after the hearing. *See* Doc. No. 40. The USB drive contains two video clips, which the Court will cite as Def. Exs. 1 and 2.

[2] The facts are either undisputed or drawn from the video footage submitted by the parties.

video shows Defendant leaving the hotel with a dog, walking along the roadway and ditch, and returning to the hotel without the dog. Hotel staff confirmed that the man in the video was a guest at the hotel. Officer Sherry learned that Defendant had an extradition warrant from Louisiana, but that the warrant could not be verified until Defendant was detained or in custody. (Def. Ex. 1). Officer Sherry told his supervisor that he was in the parking lot making sure Defendant did not leave. (*Id.*).

About 45 minutes after Officer Sherry heard the gunshot, Officer Clayton Smith, also with the Metropolitan Nashville Police Department, saw the Defendant in a hallway in the hotel. Officer Smith said, "Hey buddy, can I talk to you for a second?" (Gov't Ex. 1). Defendant responded in the affirmative. Officer Smith asked him to go outside, and Defendant responded, "Yes sir," and walked outside. Officer Smith followed. Officer Smith directed Defendant to move toward the parking lot, away from the building entrance and walkway.

Defendant stopped on the sidewalk at the edge of the parking lot and turned to face Officer Smith. The video shows at least six feet between them. Officer Smith asked the Defendant about his dog. The Defendant said the dog bit him, so he put him down. Officer Smith then asked: "Where's your gun at?" Defendant replied, "In the room." Officer Smith asked Defendant if he had a gun on him. The Defendant replied that he did not. Officer Smith then said, "Turn around for me, let me check." Defendant did so calmly and without incident. Officer Smith patted him down and did not find a weapon. Almost immediately thereafter Officer Sherry approached and placed Defendant in handcuffs. The entire interaction took less than two minutes.

The officers, Defendant, and the Defendant's female friend then proceeded to the hotel room to look for the gun. (*See* Gov't Ex. 2, Def. Ex. 2). Officer Smith asked, "Where is it?"

2

Defendant responded, "It's under the bed." Officer Smith, still looking for the gun asked, "Is it under the bed or in the bag? It must be in the bag, right?" After some more back and forth, Officer Smith said, "It's not in the bag," and the friend interjected, "Was it in the shoebox?" Defendant said, "Maybe." Later, officers found a gun inside a shoebox, which was inside a duffel bag, in a U-Haul van parked at the hotel.

Defendant seeks to suppress statements made before he was advised of his constitutional rights on April 16, 2022. From the officer body camera footage, it is apparent that Defendant made a number of statements that day. The statements at issue are: (1) the statements made by Defendant in response to questions from Officer Smith outside the hotel – that he put the dog down and that the gun was in the room; and (2) the statement made by Defendant inside the hotel room while officers were searching for the gun indicating that the gun was "maybe" in a shoebox and to check a specific bag.

## II.    ANALYSIS

Under *Miranda v. Arizona*, 384 U.S. 436 (1966), "the prosecution may not use statements … stemming from custodial interrogation of the defendant unless" law enforcement officials advised the defendant of his constitutional rights. *United States v. Williams*, 998 F.3d 716, 736 (6th Cir. 2021). There is no dispute that Defendant was not given a *Miranda* warning at any time during these events. The only issue then is whether the statements were made while the Defendant was the subject of custodial interrogation.

A person is in custody if, "in light of objective circumstances of the interrogation, a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave" *Id*. (quoting *Howes v. Fields*, 565 U.S. 499, 509 (2012)). To determine whether a person is

3

"in custody" the court considers the following non-exhaustive factors: (1) the location of the interview; (2) the length and manner of the questioning; (3) whether there was any restraint on the individual's freedom of movement; (4) whether the individual was told that he or she did not need to answer the questions. *Id*. (citing *United States v. Hinojosa*, 606 F.3d 875, 883 (6th Cir. 2010)).

In the context of *Miranda*, "interrogation" includes not only express questioning by law enforcement, but also "any words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). In determining whether the actions of the police are reasonably likely to elicit an incriminating response, the focus is "primarily on the perceptions of the suspect, rather than on the intent of the police." *Id*.

A.  **The Statements Made by Defendant Outside the Hotel**

There is no dispute that the Defendant's statements that he had put his dog down and that the gun was in the room were made in response to direct questions by law enforcement and that Defendant had not been advised of his *Miranda* rights when he made the statements. For purposes of the motion to suppress, the only issue is whether Defendant was in custody when he made the statements.

Defendant argues that he was in custody. He points to Officer Smith directing the location of the questioning by asking him to go outside the hotel and then away from the building into the open air of the parking lot. He claims that in doing so, Officer Smith restricted his freedom of movement so that Officer Sherry could place him under arrest.

The evidence shows that Officer Smith asked Defendant if he could talk to him and then asked him to go outside the hotel. The Defendant immediately agreed and walked outside to talk

4

to the officer. The conversation took place in the open parking lot area outside the hotel and lasted only a few minutes. The manner of questioning and Defendant's response were calm and non-confrontational. Defendant was not restrained, and his movement was not restricted. Under these circumstances, a reasonable person would have felt he could refuse to answer questions or leave even though Officer Smith did not directly advise him that he could do so. Officer Smith's request that Defendant talk to him outside the hotel, a request with which Defendant readily complied, does not render the interaction custodial for purposes of *Miranda*.

The Court concludes that Defendant was not in custody when he answered Officer Smith's questions outside the hotel. Therefore, the motion to suppress these statements is DENIED.

**B. The Statements Made by Defendant Inside the Hotel**

After Defendant was handcuffed, the officers went into the hotel room with Defendant and his female friend (who was not restrained) to look for the gun. While searching for the gun, Officer Smith asked where the gun was. Defendant responded that it should be under the bed and that it was either under the bed or in the bag. When Officer Smith did not find the gun in the bag, he said, "It's not in the bag." Defendant's friend then interjected, "Was it in the shoebox?" Defendant replied, "Maybe."

The Government argues Defendant's response to his friend's question is admissible because it was made in response to the friend's question, not a question by law enforcement. The Government contends the circumstances are analogous to those in *United States v. Innis*, 446 U.S. 291 (1980) and *Arizona v. Mauro*, 481 U.S. 520 (1987). The Court disagrees.

In *Innis*, two officers were having a conversation between themselves when the defendant made an incriminating statement. 446 U.S. at 295. Unlike in *Innis*, the officers here were not

5

merely having a conversation among themselves when Defendant offered the probable location of the gun. The officers were looking for the gun and asking Defendant and his friend where the gun was located.

The circumstances here are also vastly different from those in *Mauro*. In *Mauro*, the defendant was in police custody and had invoked his right to counsel. 481 U.S. at 522. The police allowed him to speak with his wife on condition that an officer would be present and the conversation recorded. *Id*. The Supreme Court held that the statements between Mauro and his wife were not the result of the functional equivalent of interrogation even though there was the "possibility" that the defendant would incriminate himself while talking to his wife. *Id*. at 528. The Court noted that the officers did not ask the defendant any questions, there was no evidence that the officers used the wife's visit for the purpose of eliciting incriminating statements, and, from the defendant's perspective, being allowed to speak to his wife was unlikely to be perceived as coercive. *Id*.

Again, here the officers were directly asking the Defendant and his friend where the gun was. Unlike in *Mauro*, where the officers were merely observing a conversation between the defendant and his wife, Officers Smith and Sherry were part of the conversation. The fact that the friend interjected with her own question to Defendant – "Was it in the shoebox?" – does not negate the overall context or coercive atmosphere of the custodial interrogation. The Court finds that the interrogation in the hotel room was an interrogation for purposes of *Miranda*.

The Government argues that if officers' actions in the hotel room did constitute interrogation for purposes of *Miranda*, the Defendant's statement is admissible under *New York v. Quarles*, 467 U.S. 649 (1980). In *Quarles*, the Court articulated a public safety exception to

6

*Miranda* that is applicable when an officer has "reason to believe that the defendant might have (or recently have had) a weapon, and (2) that someone other than police might gain access to that weapon and inflict harm with it." *Hart v. Steward*, 623 F. App'x 739, 746 (6th Cir. 2015) (citing *Quarles*, 467 U.S. 649).

The first prong is easily satisfied. Officers had reason to believe Defendant had recently shot a dog, and Defendant told them that the gun was in the hotel room. The second prong – that someone other than police might gain access to the weapon – is not as easily met. Unlike in *Quarles*, where the Defendant had discarded a gun in the supermarket and officers were concerned an accomplice might make use of it or a customer or employee might come upon it, here, the gun was suspected to be in a private hotel room, not an area frequented by the general public. *See Quarles*, 467 U.S. at 653. To be sure, until they found the gun, officers were not one hundred percent certain where it was located. But *Quarles* does not give officers carte blanche to engage in custodial interrogation any time there is a missing weapon. Under the circumstances here, public safety does not justify an exception from *Miranda*.

### III.   CONCLUSION

For the reasons stated, the Defendants Motion to Suppress (Doc. No. 27) is **GRANTED IN PART, and DENIED IN PART**. The Motion is **DENIED** as to the statements made by Defendant in the parking lot outside the hotel. The Motion is **GRANTED** as to the statements made by Defendant inside the hotel room.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE